# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM D. RODGERS,<br><br>        *Plaintiff,*<br><br>v.<br><br>COMMUNITY EDUCATION CENTERS,<br>INC. and ABC COMPANIES I-X,<br><br>        *Defendants.* | CIVIL ACTION<br>NO. 18-1954 |

**PAPPERT, J.**                                                                                                                June 6, 2019

## MEMORANDUM ORDER

On May 12, 2016, inmate William Rodgers slipped and fell on a wet floor which had been mopped by other inmates at the George W. Hill Correctional Facility. He asserts a negligence claim based on premises liability against Community Education Centers, Inc. ("CEC"), a private company that operated the prison at the time of the incident. Trial begins on Monday, June 17, 2019. *See* (ECF No. 16). The parties filed Motions *in Limine*, (ECF Nos. 38–41), and Responses thereto, (ECF Nos. 43–44, 47–48). The Court rules on each Motion for the reasons given.

1. ECF No. 38 is **DENIED**.

Rodgers argues that CEC acted in bad faith by failing to preserve video footage that would have captured his fall. Rodgers's broad request seeks to preclude CEC from "eliciting any testimony and presenting any evidence relating to the circumstances of [his] fall" as a sanction for spoliation. (Mot. at 3, ECF No. 38.) In other words, CEC should not be allowed to present a defense to the case. CEC argues that the video

1

evidence was taped over as "a matter of routine with no fraudulent intent." (Resp. at 6, ECF No. 48.)

Spoliation occurs where: (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence and (4) the duty to preserve the evidence was reasonably foreseeable to the party. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). Neither party disputes that the video footage was in CEC's control or that it would be relevant to the claims and defenses in the case; the record shows that cameras in the hallway would have captured Rodgers's fall. *See* (Mark Hiller Dep. 22:1–25:17, Jan. 17, 2019); (Gloria Jenkins Dep. 30:3–31:10, Mar. 20, 2019); (David Byrne Dep. 57:10–15, Mar. 20, 2019).

Even if the duty to preserve the video footage was reasonably foreseeable to CEC given the injuries Rodgers sustained from his fall, Rodgers has not shown that CEC intentionally suppressed or withheld any videos. The Third Circuit Court of Appeals has cautioned that "[a]lthough a District Court has discretion to draw inferences from the record on a party's intent, it strays beyond the bounds of its discretion when . . . there is no factual basis to do so." *Bull*, 665 F.3d at 74. For spoliation to occur:

> [I]t must appear that there has been an actual suppression or withholding of the evidence. *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for. See generally* 31A C.J.S. Evidence § 156(2); 29 Am. Jur .2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").

2

*Id.* at 79 (3d Cir. 2012) (quoting *Brewer*, 72 F.3d at 334) (emphasis in original). After his fall on May 12, 2016, Rodgers requested that CEC save the video footage and submitted a grievance form on June 10, 2016, twenty-nine days after the incident. (William Rodgers Dep. 71:20–72:22, Jan. 16, 2019.) Warden Byrne testified that he wasn't sure if Rodgers's grievance form was submitted because it was "not signed off on." (Byrne Dep. 57:3–6.) He also testified that the video system records over itself after "approximately thirty days." (*Id.* at 57:7–19.) Moreover, the prison does not normally investigate slip-and-fall claims, nor does it have a policy to preserve or review videos capturing those incidents. (*Id.* at 58:17–61:3.) Because "[a] finding of bad faith is pivotal to a spoliation determination," *Bull*, 665 F.3d at 79, and there is no evidence sufficient to allow the Court to conclude that CEC destroyed, suppressed or withheld any video, the Court denies the Motion.

2. ECF No. 39 is **GRANTED** and ECF No. 40 is **DENIED**.

Rodgers seeks to preclude CEC from eliciting testimony and presenting evidence related to his prior criminal convictions. (ECF Nos. 39 & 44.) CEC moves to admit, for impeachment purposes, Rodgers's convictions for rape and sexual assault. (ECF Nos. 40 & 47.)

On August 7, 2012, Rodgers pled guilty to one count of possession of drug paraphernalia in violation of 35 P.S. § 780-113(a)(32). *See* (ECF No. 39, Ex. A). That same day, he entered a plea of *nolo contendere* for driving under the influence in violation of 75 Pa. Cons. Stat. Ann. § 3802(a)(1). *See* (*id.* at Ex. B). On February 16,

3

2017, he was found guilty of rape of an unconscious person and sexual assault. *See* (*id.* at Ex. C).

Evidence of prior convictions within the last ten years can be admitted under Federal Rule of Evidence 609, which states in relevant part:

> (a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>   (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>      (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
>      (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>   (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

Fed. R. Evid. 609(a)(1–2). Rodgers's 2012 convictions are not crimes punishable by death or imprisonment for more than one year. *See* 35 P.S. § 780-113(i) (stating that a person who violates 35 P.S. § 780-113(a)(32) is "guilty of a misdemeanor and upon conviction thereof shall be sentenced to pay a fine not exceeding two thousand five hundred dollars or to imprisonment not exceeding one year, or both"); *see also* 75 Pa. Cons. Stat. Ann. § 3803(a)(1) ("An individual who violates section 3802(a) . . . and has no more than one prior offense commits a misdemeanor for which the individual may be sentenced to a term of imprisonment of not more than six months and to pay a fine . . . ."). Furthermore, neither conviction involves a dishonest act or false statement as required under Rule 609(a)(2).

With respect to Rodgers's rape and sexual assault convictions, Rule 609(a)(1)(A) requires the Court to conduct Rule 403's balancing test, which permits exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  The probative value of admitting Rodgers's rape conviction would be substantially outweighed by the prejudicial effect on the jury in assessing the merits of the case.  Moreover, although CEC attempts to analogize Rodgers's sex offenses to robbery and argue that raping an unconscious victim involves an act of deceit, rape is not a *crimen falsi* and is thus inadmissible under Rule 609(a)(2).  *See Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004) (quoting *Gov't of Virgin Islands v. Toto*, 529 F.2d 278, 281 (3d Cir. 1976)) ("Although the term *'crimen falsi'* has been subject to many definitions, the generally accepted scope of the term would be crimes that are in the nature of perjury, criminal fraud, embezzlement, false pretense or any other offense the commission of which involves some element of untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.")

3. ECF No. 41 is **DENIED**.

CEC seeks to prevent Rodgers from testifying that he participated in a course of physical therapy, arguing that there are no records evidencing any physical therapy and that a report from Rodgers's medical expert, Eugene Elia, confirms that he did not undergo physical therapy after the incident.  CEC cites to Dr. Elia's January 24, 2018 evaluation note where he wrote: "[Rodgers] states he suffered the fracture while in jail.

5

He underwent rodding by Dr. Wolf on 5-12-16  He states he did not have a good PT course." (Ex. B, ECF No. 41.)  In response, Rodgers acknowledges that his physical therapy records have not been located but contends that CEC misunderstands Dr. Elia's report and that Dr. Elia prescribed physical therapy for Rodgers.  (ECF No. 43.)

On February 19, 2019, Dr. Elia wrote a narrative report of Rodgers's medical treatment, stating that: "The impression at the time was that Mr. Rogers's [sic] right hip fracture had completely healed.  He was noted to have mild residual weakness and discomfort, and it was felt at that time by myself that the patient would benefit from a short course of physical therapy." (*Id.*, Ex. A at 2.)  The report reflects that Dr. Elia recommended a course of physical therapy for Rodgers following his fall.  To the extent that Rodgers testifies about any physical therapy he received, CEC is free to cross-examine him on the absence of any records corroborating his testimony.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.